PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

COWAN SYSTEMS, INCORPORATED,
             *Plaintiff-Appellee,*

v.

HARLEYSVILLE MUTUAL INSURANCE
COMPANY,
             *Defendant-Appellant.*

No. 05-2253

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-05-217-CCB)

Argued: May 23, 2006

Decided: August 8, 2006

Before WILKINSON and NIEMEYER, Circuit Judges,
and Henry F. FLOYD, United States District Judge for
the District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Wilkinson and Judge Floyd joined.

_____

## COUNSEL

**ARGUED:** William Carlos Parler, Jr., PARLER & WOBBER, Towson, Maryland, for Appellant. David A. Skomba, FRANKLIN & PROKOPIK, Baltimore, Maryland, for Appellee. **ON BRIEF:** Denise E. Mobley, PARLER & WOBBER, Towson, Maryland, for Appel-

lant. Shannon O. Colvin, FRANKLIN & PROKOPIK, Baltimore, Maryland, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

In this insurance coverage case, we hold that Harleysville Mutual Insurance Company had a contractual duty to provide Cowan Systems, Inc. with a defense in an action commenced against Cowan by Linens N Things, Inc., who, facing a claim for premises liability, sought indemnity from Cowan based on an indemnification provision in a commercial contract between them.

George Shaffer, a tractor-trailer driver for Cowan, was injured while he was delivering an empty Linens N Things trailer to a mud lot leased by Linens N Things. After disconnecting the empty trailer, Shaffer slipped and fell on ice in the mud lot, injuring his knee. Shaffer filed a personal injury action against Linens N Things alleging that Linens N Things had negligently failed to remove ice and snow from the mud lot.

Relying on an indemnity provision in its transportation contract with Cowan, Linens N Things filed a third-party complaint against Cowan to have Cowan indemnify Linens N Things for its premises liability.

When Cowan presented the suit papers to its insurer, Harleysville, Harleysville denied coverage, claiming that it had no duty to defend because of the limited scope of contractual coverage and various exclusions in its policy. Cowan commenced this action for declaratory judgment. In granting Cowan summary judgment, the district court concluded that Linens N Things' claims against Cowan fell within the policy's scope of coverage and that the exclusions relied on by Harleysville were inapplicable. The court ordered Harleysville to reimburse Cowan for its attorneys fees, costs, and expenses. *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 22197, at *35 (D. Md. 2005).

For the reasons that follow, we affirm.

I

Cowan, a transportation company based in Baltimore, Maryland, entered into a "Truckload Transportation Agreement" with Linens N Things' Clifton, New Jersey, office to provide transportation services for Linens N Things. George Shaffer worked for Cowan as a shuttle driver, transporting Linens N Things trailers from its depot to a mud lot in Gloucester County, New Jersey, which Linens N Things leased from Erdner Brothers, Inc. for storing its trailers.

On January 9, 2001, after "dropping" a trailer at the mud lot, Shaffer slipped and fell on ice, injuring his knee. Shaffer commenced a personal injury action in the Superior Court of New Jersey in Gloucester County against Linens N Things and Erdner Brothers, alleging that either or both were negligent in failing "to provide for snow and ice removal" at the mud lot. In the same action, Linens N Things filed a third-party complaint against Cowan, alleging that under the "Truckload Transportation Agreement," Cowan had agreed to indemnify Linens N Things

> from and against all claims, actions, losses, damages, expenses, judgments, and costs (including attorney's fees and costs) resulting from or arising out of damage or injury to persons (including employees, agents, or subcontractors of Shipper) or property, caused in whole or in part by [Cowan's] performance or nonperformance, including, but not limited to loading, handling, transportation, and unloading for delivery of any shipment hereunder by [Cowan] or any of [Cowan's] directors, officers, employees, agents or subcontractors in the performance of this Agreement.

Cowan forwarded the suit papers to Harleysville, who had issued Cowan a Commercial General Liability ("CGL") insurance policy, and requested that Harleysville provide Cowan with a defense against Linens N Things' third-party complaint. Harleysville refused to provide Cowan with a defense, citing to limitations of coverage and to multiple policy exclusions relating to contract liability, bodily injury suffered by the insured's employee, and bodily injury arising from the

use of any auto owned by the insured. Harleysville concluded, "[w]e will not be able to provide for your defense or indemnification for the Third-Party Complaint filed in this matter." Cowan defended itself in the underlying action at its own expense and obtained a summary judgment in its favor.

Cowan commenced this action against Harleysville, seeking a declaratory judgment that Harleysville breached its duty to defend Cowan in the action commenced against it by Linens N Things. Harleysville filed a motion for summary judgment, claiming that it properly denied coverage to Cowan based on limitations in its contractual coverage and exclusions for (1) workers' compensation, (2) employer's liability, and (3) "auto" liability. Cowan filed a cross-motion for summary judgment, arguing to the contrary.

The district court entered summary judgment in favor of Cowan on November 14, 2005, holding that Cowan's indemnification agreement was an insured contract and that none of the asserted exclusions were applicable. It concluded therefore that Harleysville had a duty to defend Cowan in the underlying litigation. The court ordered Harleysville to reimburse Cowan for all of its costs and expenses, including attorneys fees, in defending the underlying litigation, as well as its attorneys fees in prosecuting this declaratory judgment action, as provided by Maryland law. From the district court's judgment, Harleysville filed this appeal.

II

Under Maryland law, which the parties agree is controlling, the insurer's duty to defend is a "contractual duty arising out of the terms of a liability insurance policy" and is "broader than the duty to indemnify." *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 569 (Md. 1997). Whereas the insurer's duty to indemnify only attaches upon liability, "[a]n insurance company has a duty to defend its insured for all claims that are *potentially* covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. 2004) (emphasis added); *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. 1975) ("Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer must still

defend if there is a *potentiality* that the claim could be covered by the policy").

   To establish whether an insurance company has a duty to defend its insured, a two-part inquiry is undertaken, asking:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the [underlying] tort action potentially bring the tort claim within the policy's coverage?

*Montgomery County Bd. of Educ. v. Horace Mann Ins. Co.*, 860 A.2d 909, 915 (Md. 2004) (first alteration in original) (quoting *St. Paul Fire & Marine Ins. v. Pryeski*, 438 A.2d 282, 285 (Md. 1981)). Before the decision in *Aetna Casualty & Surety Co. v. Cochran*, 651 A.2d 859 (Md. 1995), Maryland courts answered these two questions by applying the "eight corners" rule, under which only the underlying complaint and the insurance policy could be consulted to determine the potentiality of coverage. In *Cochran*, however, the Maryland Court of Appeals modified the rule to allow insureds to introduce extrinsic evidence for the purpose of demonstrating coverage. The court kept in place an asymmetrical prohibition on the use of extrinsic evidence by the insurer. Thus, in deciding whether to defend, an insurer may only rely on the language of the policy and the facts alleged in the complaint, and not on outside evidence, as that would risk deciding the question on facts not advanced in the underlying action. *Id.* at 866. Moreover, any doubts about the potentiality of coverage must be resolved in favor of the insured. *See Walk*, 852 A.2d at 106-07 ("If there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured").

   The parties do not dispute that the CGL policy's affirmative insuring provisions afford coverage in specified circumstances for tort liability assumed in a contract. The policy issued by Harleysville to Cowan insures Cowan's contractual liability insofar as Cowan

> assume[d] the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The tort liability alleged in the underlying complaint filed by Shaffer against Linens N Things was Linens N Things' negligence in failing to remove snow and ice from the mud lot, and the contract assuming this tort liability was the Truckload Transportation Agreement between Linens N Things and Cowan, in which Cowan agreed to indemnify Linens N Things for all claims "resulting from or arising out of" injury to persons "caused in whole or in part by [Cowan's] performance of the transportation agreement."

Even though Harleysville agrees that the CGL policy provides Cowan coverage for certain tort liability that Cowan assumed by contract, it argues that the contractual coverage does not insure Cowan's indemnification of liability *to an employee* of Cowan. In addition, Harleysville contends that three policy exclusions apply to deny Cowan coverage in this case: (1) the workers' compensation exclusion; (2) the employer's liability exclusion; and (3) the auto exclusion. We address Harleysville's points *seriatim*.

### III

First, Harleysville contends that its policy's contractual coverage does not extend to Cowan's agreement to indemnify Linens N Things because Linens N Things' liability arose from the claim of Shaffer, who was Cowan's employee and therefore not a "third person or organization" whose claim was covered by the contractual coverage provision. We conclude, however, that Harleysville's contention rests on a misconstruction of who a "third person" is.

Under the Truckload Transportation Agreement between Cowan and Linens N Things, Cowan agreed to indemnify Linens N Things for torts arising out of the transportation operations conducted by Cowan. Thus, Cowan, as the insured, assumed the tort liability of "another party," i.e. Linens N Things. In this case, Linens N Things' liability was based on a breach of its duty to Shaffer, who was a "third person." Shaffer was not its employee and so was a "third person" with respect to it. Moreover, Shaffer was not a party to the Truckload Transportation Agreement and therefore was also a "third person" with respect to the contractual indemnification in that agreement. Because Cowan was assuming Linens N Things' tort liability to Shaffer and because Shaffer was a "third person" with respect to Linens

N Things, the conditions of contractual coverage were satisfied. Stated otherwise in the language of the contractual coverage, Shaffer was a third person with respect to Linens N Things, which faced tort liability arising from Shaffer's personal injury suit. In bringing its third-party complaint, Linens N Things sought to shift *its own* tort liability (created by a third person) to Cowan under the indemnity provisions of their "Truckload Transportation Agreement." This is just the circumstance under which the contractual coverage provides insurance to Cowan.

IV

Harleysville next contends that the policy's workers' compensation exclusion applies to deny coverage in this case because Shaffer was an employee who received workers' compensation by reason of his employment with Cowan. The CGL policy excludes coverage for "[a]ny obligation of the insured [Cowan] under a workers' compensation, disability benefits, or unemployment compensation law or any similar law." Harleysville contends that this provision applies to bar coverage, reasoning that "Shaffer's compensation from Cowan related to an on-the-job injury, as contemplated by the policy, [and] is limited to that which he would receive vis-à-vis the State's statutory workers' compensation scheme." It argues that permitting Shaffer to recover through his employer's insurance would enable him to obtain duplicative recovery — one from workers' compensation and one from Harleysville.

This contention, however, ignores the fact that Cowan was not seeking coverage from Harleysville for a "workers' compensation, disability benefits, or unemployment compensation" claim made against it. Rather, it was seeking coverage for a contractual obligation in which it undertook to indemnify Linens N Things. And Linens N Things was not seeking to pass on to Cowan any workers' compensation liability. It was seeking indemnification from Cowan for its premises liability. In short, no obligation for workers' compensation was involved directly or indirectly, and for that reason, the exclusion is inapplicable.

V

Harleysville also contends that its policy's employer's liability exclusion applies to deny Cowan coverage. The CGL policy excludes

coverage for "bodily injury" to an employee that "aris[es] out of and in the course of employment by the insured," and the exclusion applies "(1) whether the insured may be liable as an employer or in any other capacity; and (2) to any obligation to share damages with or repay someone else who must pay damages because of the injury." Because Shaffer was employed by Cowan at the time of his accident, Harleysville contends that this exclusion applies.

This argument might be persuasive but for the fact that the employer's liability exclusion contains an exception for "insured contracts." That exception states that the employer's liability "exclusion does not apply to liability assumed by the insured under an 'insured contract.'" "Insured contract" is defined in the policy as

> [t]hat part of any other contract or agreement pertaining to
> your business . . . under which you assume the tort liability
> of another party to pay for "bodily injury" or "property dam-
> age" to a third person or organization. Tort liability means
> a liability that would be imposed by law in the absence of
> any contract or agreement.

Given this exception, if an employer enters an agreement to insure another party for its tort liability, then the employer's liability exclusion, which exempts coverage of bodily injury to an employee arising from actions undertaken during the course of employment, is rendered inapplicable. *See Riviera Beach Volunteer Fire Co. v. Fidelity & Cas. Co. of New York*, 388 F. Supp. 1114, 1125 (D. Md. 1975) (holding that "where courts have found implied contractual obligations of indemnification between the third party and the employer, *as distinguished from mere tort liability*, they have required the insurer to defend the employer in the third-party action" (quoting *Kipka v. Chicago & Northwestern Ry.*, 289 F. Supp. 750, 756 (D. Minn. 1968))).

As we have already noted, Cowan's indemnification agreement with Linens N Things is an "insured contract," and by this indemnification agreement, Cowan assumed the "tort liability of another party [Linens N Things] to pay for 'bodily injury' . . . to a third person [Shaffer]."

## VI

Finally, Harleysville contends that the CGL policy's "auto" exclusion applies to deny Cowan coverage. The CGL policy excludes coverage for:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

Harleysville argues that this exclusion applies to Shaffer's claims because (1) Shaffer was injured as he was attempting to get back into his truck, and (2) "but for the use of the automobile [i.e. the truck] in the course of his employment, Shaffer would not have been at the mud lot where he sustained his injuries, irrespective of the theory upon which liability rests."

First, we note that Harleysville's argument is based on the assumption that Shaffer was injured as he was attempting to get into his truck. That fact, however, is not alleged in the underlying complaint. The complaint merely states that on January 9, when Shaffer was working for Cowan, delivering an empty trailer to the mud lot, he "slipped and fell, suffering injuries." As for the cause of the slip and fall, Shaffer alleged that

> The defendants failed to properly maintain its [sic] site; failed to properly supervise its [sic] site; failed to comply with ordinary and customary safety procedures; carelessly and negligently failed to provide for snow and ice removal, creating an unsafe condition; failed to provide any guards, light or other device to warn of the unsafe conditions; and breached other duties as shall become known in the future.

These allegations state a straightforward claim for premises liability, charging Linens N Things (as well as Erdner Brothers) with the negligent failure to maintain the mud lot in a safe condition.

In arguing that Shaffer was injured as he was entering his truck, Harleysville runs afoul of the Maryland rule which prohibits the insurer from introducing extrinsic evidence to determine the potentiality of coverage. *See Cochran*, 651 A.2d at 862; *Montgomery County*, 860 A.2d at 915. Looking at only the allegations of the underlying complaint and comparing them to the policy of insurance, there is no basis from which to conclude that this accident arose out of the use of an "auto."

Even if extrinsic evidence concerning the circumstances of Shaffer's injuries are considered, the record demonstrates that Shaffer's tort suit did not "arise out of the . . . use" of an "auto." The record shows that Shaffer's injuries were caused by a slip and fall on the snow and ice that covered the mud lot, which occurred as he was attempting to get back into a truck. The presence of the truck, without more, was not a proximate cause of his injuries; rather, if anything, his fall was caused by the condition of the mud lot and his loss of footing on the mud lot. Harleysville has provided us with no authority to support a position that the mere presence of an automobile at the scene of a slip and fall constitutes "use of an auto" sufficient to trigger the auto exclusion.

Harleysville's reliance on *Northern Assurance Company of America v. EDP Floors, Inc.*, 533 A.2d 682 (Md. 1987), and *Rubins Contractors, Inc. v. Lumbermens Mutual Insurance Co.*, 821 F.2d 671 (D.C. Cir. 1987), is badly misplaced. Those cases stand for the proposition that "use" of an automobile may trigger the auto exclusion "regardless of whether the injury may also be said to have arisen out of other causes further back in the sequence of events." *Northern Assurance*, 533 A.2d at 689. In *Rubins Contractors*, the court held that the exclusion applied to injuries caused by an employee driving a company truck, despite the employer's claim that the accident resulted from negligent entrustment rather than from the employee's "use" of an automobile. The court rejected the employer's position, holding that "[i]t seems an extraordinary *non sequitur* to say that liability has *not* resulted from ownership or use of an automobile merely because the tort has a component separate from motor vehicle operation." 821 F.2d at 676. The *Rubins* court did *not* hold, however, what would be an equally extraordinary *non sequitur*, namely, that liability results — and the automobile exclusion applies — merely because there was an

automobile at the scene of the accident. As the district court in this case correctly observed, "[h]olding that the operation of the automobile need not be the sole or proximate cause is not the same as saying an automobile need merely be present in order for the exclusion to apply." *Cowan Sys., Inc. v. Harleysville Mutual Ins. Co.*, 2005 U.S. Dist. LEXIS 22197 at *17.

\* \* \*

The CGL policy provides coverage for tort liability assumed by Cowan in a contract, and by focusing on the precise nature of the liability claimed in the underlying suit — i.e. the tort liability of Linens N Things and Cowan's contractual liability for indemnification of Linens N Things — coverage *vel non* may be readily determined, as outlined above. The judgment of the district court is

*AFFIRMED*.