[No. 66102-7-I.   Division One.   December 5, 2011.]

INTERNATIONAL MARINE UNDERWRITERS, *Respondent*, v. ABCD
MARINE, LLC, ET AL., *Appellants*.

*David J. Balint* and *Martin D. Fox*, for appellants.

*Dennis M. Moran* and *William A. Keller*, for respondent.

¶1 SPEARMAN, J. — In this insurance coverage case, we must decide whether Albert Boogaard, an injured named insured who contractually assumed the liability of the tortfeasor Northland Services Inc. (NSI), is covered by his own comprehensive marine liability policy. Specifically, the question we must address is whether the policy's exclusion of coverage for liability assumed in a contract precludes coverage for Boogaard or whether there is coverage under the policy's exception for an "Insured Contract." We conclude that because Boogaard is not a "third person" under the "Insured Contract" clause, the exclusion applies, and the trial court properly granted summary judgment. Affirmed.

## FACTS

¶2 Two companies, NSI and Naknek Barge Lines LLC retained ABCD Marine (through ABCD senior partner, Albert Boogaard) as an independent contractor to provide welding services. Boogaard provided welding services to NSI and Naknek at a marine terminal located on the Duwamish River beginning in 2000. According to the parties, NSI and Naknek are related to a third corporate entity, Northland Holdings Inc., although the record is not clear as to the exact relationship between the companies.

¶3 ABCD hired Alliance Insurance as an insurance broker. Alliance submitted a policy application on behalf of

ABCD to International Marine Underwriters (IMU) insurance, and IMU issued a "Comprehensive Marine Liability and Ship Repairers Legal Liability" policy in April 2000. Alliance told IMU that ABCD did not have any written contracts with other parties and did not require any additional insureds on the policy.

¶4 In August 2001, Naknek sent ABCD a letter indicating that all of Naknek's contractors must provide commercial general liability insurance coverage of $1 million, and that the certificate of insurance " 'must name and waive Naknek Barge Lines LLC and Northland Holdings Incorporated.' " According to Boogaard, he told Alliance about this letter. IMU, however, contends it never received a request to add any additional insured to the policy and as such, it simply renewed the policy without any significant changes over the following years: 2001, 2002, 2003, and 2004. The 2003-04 policy included no additional insured endorsements for any entity.[1]

¶5 On September 29, 2004, ABCD (via its senior partner Boogaard) and NSI entered into a written "Access Agreement" (Agreement). The Agreement required ABCD to (1) defend and indemnify NSI for injuries to all persons arising out of ABCD's operations and/or use of NSI's property and (2) obtain liability insurance that included an additional insured endorsement naming NSI as an additional insured on the policy:

> 8. *Personal Injuries*. User [Boogaard/ABCD] shall be responsible for all bodily and personal injuries to all persons arising out of or resulting from its operations and/or use of the Property, including bodily and personal injuries to its own employees, except if caused by the sole intentional negligence of NSI. User shall indemnify and hold harmless (including costs and legal fees) NSI of and from all losses, damages, claims and suits for bodily and personal injury, whether direct or indirect,

---

[1] We note that the 2003-04 policy, which was the policy in effect when Boogaard was injured, is the only policy ever submitted to the trial court and is thus the only policy in the record.

arising out of or relating to its operations or use of the Property, except such bodily and personal injuries caused directly from the sole intentional negligence of NSI. This indemnification agreement includes all claims and suits against NSI by any employee (present or former) of User and User expressly waives all immunity and/or limitation of liability under any workers' compensation, disability benefits or other employee or employment-related act of jurisdiction.

. . . .

10. *Insurance.* User shall obtain and maintain, at its own expense, public liability insurance for personal injuries and property damage covering User's operations under this agreement, including a contractual liability endorsement which specifically insures User's liabilities pursuant hereto. Such insurance must have minimum limits per occurrences of $1,000,000 and shall be evidenced by an Insurance certificate provided to NSI prior to commencement of operations. The insurance must specifically name NSI as additional insured and must waive subrogation against NSI (and its officers, directors, employees, agents, and subsidiary or affiliated companies), with the waiver to include any claim relative to policy deductible, and must be primary to any other insurance which may be maintained by NSI. . . .

It is undisputed that neither Alliance or IMU were ever informed of, or provided a copy of, the Agreement.

¶6 Boogaard was seriously injured by a forklift driven by an NSI employee on October 19, 2004. Alliance advised IMU of the accident in November 2004. When Alliance representative Tammy Hausinger spoke with the IMU claim manager, Dave O'Laughlin, about the accident, she agreed that there was no coverage for Boogaard's injuries under the IMU policy. In December 2004, for the first time, Ms. Hausinger asked IMU to add "Northland Services" as an additional insured to the policy. IMU made this change prospectively. The policy in effect at the time of Boogaard's injury included the following provisions:

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

Insuring Agreement.

1. We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

. . . .

## SECTION II – EXCLUSIONS

## A. EXCLUSIONS APPLICABLE TO SECTION 1, COVERAGES A AND B ONLY:

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

. . . .

2. "Bodily injury" or "property damages" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   a. Assumed in a contract or agreement that is an "insured contract," provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; . . .

   . . . .

## SECTION IV – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   . . . .

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   . . . .

## SECTION IX – DEFINITIONS

. . . .

9. "Insured Contract" means:

. . . .

   f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third person or organization. . . .

The declarations listed "ABCD Marine" as the named insured.

¶7 Boogaard sued NSI and Northland Holdings for his personal injuries. NSI and Northland counterclaimed for indemnity and for breach of the Agreement, which it alleged required Boogaard to include NSI as an additional insured. Boogaard later tendered defense of the counterclaims to IMU. IMU accepted the tender under a reservation of rights. NSI moved for summary judgment, and the trial court granted the motion, finding Boogaard had as a matter of law breached the Agreement and was required to indemnify NSI. IMU then denied coverage but agreed to continue to pay for Boogaard's defense for an appeal. Boogaard, however, did not appeal the summary judgment ruling. Instead, Boogaard and NSI settled the case, stipulating to damages of $712,022.01.

¶8 The trial court held a reasonableness hearing (after joining IMU as a party to the hearing). The court approved the settlement agreement as reasonable, awarding Boogaard a judgment of $600,000.00 against NSI (for his personal injury claim), and awarding NSI a judgment of $712,022.01 against Boogaard (indemnification for Boogaard's personal injury claim plus attorney fees and costs). IMU claims in its brief that ABCD and Boogaard demanded IMU pay that entire $712,022.01.

¶9 IMU brought a declaratory action against ABCD and Boogaard to determine coverage. ABCD and Boogaard filed an amended answer, making counterclaims against IMU for

breach of insurance contract and for bad faith. They later amended the answer to include a "cross claim" against Alliance for negligence.[2] The trial court granted Alliance's motion for summary judgment, dismissing the claims against it. The trial court also granted IMU's motion for summary judgment on coverage, ruling that ABCD and Boogaard were not entitled to coverage. The court thus dismissed their breach of insurance contract counterclaim. The trial court did not dismiss the bad faith counterclaim, but the parties stipulated to dismissal without prejudice, and that claim is not at issue here.

¶10 ABCD and Boogaard appealed both the order dismissing IMU and the order dismissing Alliance. Before oral argument, however, ABCD, Boogaard, and Alliance settled and jointly moved to dismiss that portion of the appeal. We granted the motion. As such, the only remaining issues on appeal relate to the trial court's dismissal of the claims against IMU.

## DISCUSSION

¶11 ABCD and Boogaard argue that the trial court erroneously concluded there was no coverage under the IMU policy. For the reasons described herein, we disagree with ABCD and Boogaard, and affirm the trial court.

¶12 ABCD and Boogaard contracted with NSI specifically to indemnify NSI for any and all injuries caused by NSI. On that issue, the Agreement is clear that ABCD and Boogaard were "responsible for all bodily and personal injuries to all persons arising out of or resulting from [their] operations and/or use of the Property, including bodily and personal injuries to [their] own employees." Likewise, they were to "indemnify and hold harmless (including costs and legal fees) NSI of and from all losses, damages, claims and suits for bodily and personal injury" and the indemnifica-

---

[2] Although denominated a "cross claim" below, ABCD's claim against Alliance is actually a third-party action.

tion agreement "includes all claims and suits against NSI by any employee (present or former) of [ABCD/Boogaard]."

¶13 Exclusion 2 of the IMU policy generally excludes from coverage such contractual assumptions of liability. ABCD and Boogaard contend the Agreement, however, is an "Insured Contract" under the IMU policy, which would bring ABCD's contractual assumption of NSI's liability outside of exclusion 2. An "insured contract" under the IMU policy means:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third person or organization. . . .

ABCD and Boogaard claim that because they contracted in the Agreement to indemnify NSI for any and all claims against NSI, they have an Insured Contract, and exclusion 2 does not operate to bar coverage.

¶14 IMU does not disagree that the Agreement is an Insured Contract. It contends only that Boogaard is not covered by the exception because he is not a "third person" as that term is used in the Insured Contract clause. Neither party cites to relevant case law in support of their respective positions as to the meaning of the term "third person" in this context.[3] However, in *Cowan Systems, Inc. v. Harleysville Mutual Insurance Co.*, 457 F.3d 368 (4th Cir. 2006) the court

---

[3] None of the three cases cited by ABCD and Boogaard are helpful here. *Golden Eagle Insurance Co. v. Insurance Co. of the West*, 99 Cal. App. 4th 837, 121 Cal. Rptr. 682 (2002), was primarily about whether legal fees and expenses could be included as "damages" under the policy; *see id.* at 847, and nowhere in the case did the court address the meaning of the phrase "third person" as used in the Insured Contract clause. We note, however, that unlike the situation here, the injured party was not an insured, an employee of an insured, and was not connected to the contracting parties. Similarly, in *John Deere Insurance Co. v. De Smet Insurance Co. of South Dakota*, 650 N.W.2d 601 (Iowa 2002) the court did not address whether the injured party was a "third person" but there also the injured party was not the insured, an employee of an insured, or in any way connected to either of the contracting parties. *See generally John Deere*, 650 N.W.2d at 602-03. Likewise, in *Truck Insurance Exchange v. BRE Properties, Inc.*, 119 Wn. App. 582, 81 P.3d 929 (2003), the court did not address the meaning of the term "third

considered the term "third person" in an Insured Contract clause identical in relevant part to the one at issue here. In that case, Cowan Systems contracted with Linens N Things to provide transportation services. In the contract, Cowan agreed to indemnify Linens N Things against " 'all claims, actions, losses, damages, expenses, judgments, and costs . . . resulting from or arising out of damage or injury to persons . . . caused in whole or in part by [Cowan's] performance or nonperformance.' " *Cowan*, 457 F.3d at 371 (third alteration in original). Harleysville Mutual Insurance insured Cowan. *Id.*

¶15  A Cowan employee (George Shaffer) slipped and fell on ice when delivering a trailer to Linens N Things. He sued Linens N Things, who in turn filed a third-party complaint against Cowan, alleging Cowan had agreed to indemnify. *Id.* at 371. Cowan tendered to Harleysville, but Harleysville denied coverage, refusing to defend or indemnify. Cowan defended itself and obtained summary judgment in its favor. Cowan then filed a declaratory judgment action against Harleysville. One of the issues was whether the contract between Cowan and Linens N Things was an Insured Contract that would bring Cowan's agreement to indemnify outside of the general exclusion of contractual assumptions of liability.

¶16  Harleysville did not dispute that the indemnification agreement was an Insured Contract, but it claimed that Shaffer was not a "third person" with respect to Cowan because he was an employee of Cowan. The Fourth Circuit rejected this argument, holding the question of whether one is a "third person" should be answered from the frame of reference of the liable party:

> Thus, Cowan, as the insured, assumed the tort liability of "another party," i.e. Linens N Things. In this case, Linens N

person" but there the injured plaintiff was the insured's employee, not the insured himself.

Things' liability was based on a breach of its duty to Shaffer, who was a "third person." Shaffer was not its employee and so was a "third person" with respect to it. Moreover, Shaffer was not a party to the Truckload Transportation Agreement [between Cowan and Linens N Things] and therefore was also a "third person" with respect to the contractual indemnification in that agreement.

*Id.* at 373. Here, although Boogaard was not an employee of NSI, he nevertheless had a first party relationship with it because both Boogaard and NSI were parties to the Agreement. Moreover, as a general partner of the named insured on the policy at issue here, Boogaard was also a first party as to IMU. Thus, unlike the injured party in *Cowan*, Boogaard is not a "third person" to the Agreement or to the insurance policy. Therefore, the Insured Contract exception does not apply to him and exclusion 2 of the IMU policy precludes coverage for Boogaard and ABCD's contractual assumption of NSI's liability. The trial court did not err in granting summary judgment.

¶17 ABCD and Boogaard also argue the trial court should be reversed because NSI was an additional insured on the policy and had a right to be directly covered under the policy. We reject this argument. First, in their briefing, ABCD and Boogaard repeatedly conflate NSI with Northland Holdings and Naknek, implying that the employee who caused Boogaard injuries (Jeff Cronn) was employed by Northland Holdings and/or Naknek. But NSI is the only party as judgment debtor on the judgment entered in favor of Boogaard. Moreover, Cronn was not employed by Northland Holdings or Naknek. He was an employee of NSI, and there was no dispute about this below.[4]

---

[4] ABCD and Boogaard also appear to claim that because they settled their claims with NSI and Northland Holdings, and because Judge Spector found the settlement was reasonable, IMU should somehow be precluded from arguing only NSI, and not Northland Holdings, was responsible as Cronn's employer for Boogaard's injuries. But because they fail to support this argument with citation to any authority, we decline to consider it. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

¶18 From the faulty premise that Cronn was employed by Northland Holdings and/or Naknek, ABCD and Boogaard then argue Northland Holdings and/or Naknek were additional insureds based upon two certificates issued by Alliance for the 2001-02 and 2002-03 policies. As IMU points out, however, "the purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained; the certificate itself, however, is not the equivalent of an insurance policy." *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 100-01, 720 P.2d 805 (1986). Indeed, each certificate indicates that it "is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Additionally, it is undisputed that Alliance was ABCD and Boogaard's agent, not IMU's agent. ABCD and Boogaard's claim that Alliance was granted "permission" from IMU to add additional insured endorsements is not supported by the citations to the record.

¶19 Moreover, ABCD and Boogaard never submitted in opposition to IMU's summary judgment motion any policies actually showing NSI, Northland Holdings, or Naknek were additional insureds.[5] The only evidence in the record on this issue was the 2004 IMU policy showing the policy contained no additional insured endorsements, the testimony of the IMU claim handler that IMU was never asked to add additional insureds, and the letter from Alliance to IMU indicating ABCD and Boogaard would not be adding additional insureds. We reject ABCD and Boogaard's arguments on this issue.

---

[5] ABCD and Boogaard claim, "[W]e do have one of the policies, the facing page of which shows that insurance was issued for all of the corporations, including Northland Holdings, Inc. and Northland Services Inc., Naknek, Northland Terminal Service, Inc. and others." The policy to which they refer, however, has nothing to do with IMU's policy issued to ABCD, but is instead a wholly different policy issued to the Northland Entities as named insureds by XL Specialty, a totally different insurance company.

■■■ ¶20  Boogaard and ABCD also argue the trial court erred by failing to reform the insurance policy to add NSI as an additional insured. We disagree. "To support a reformation of contract, there must be a showing of either fraud or mutual mistake." *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 902, 385 P.2d 45 (1963). As is described above, ABCD and Boogaard made no showing of fraud or mutual mistake. There is no evidence in the record showing IMU intended to cover NSI as an additional insured.

¶21  Finally, even though the parties stipulated to the dismissal of the bad faith and breach of insurance contract claims without prejudice, and even though ABCD did not appeal that order, ABCD appears to argue in various portions of its brief on appeal that IMU committed bad faith. The bad faith claims are not at issue here, however, and as such, we decline to address those arguments.

¶22  Affirmed.

DWYER, C.J., and SCHINDLER, J., concur.

Reconsideration denied March 7, 2012.

Review granted at 175 Wn.2d 1009 (2012).