UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BERETTA U.S.A. CORPORATION,
                    *Plaintiff-Appellant,*

v.

THE FEDERAL INSURANCE COMPANY;
GREAT NORTHERN INSURANCE
COMPANY,
                    *Defendants-Appellees.*

No. 00-2387

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-99-2798-CCB)

Argued: June 4, 2001

Decided: September 6, 2001

Before WILKINSON, Chief Judge, KING, Circuit Judge,
and Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion. Chief Judge Wilkinson
wrote a separate opinion concurring in the judgment.

---

## COUNSEL

**ARGUED:** Finley T. Harckham, Sr., ANDERSON, KILL & OLICK,
P.C., New York, New York, for Appellant. Jonathan Adrian Constine,

HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Richard P. Lewis, Daniel J. Healy, ANDERSON, KILL & OLICK, P.C., New York, New York; Michele A. Gallagher, ANDERSON, KILL & OLICK, L.L.P., Washington, D.C., for Appellant. Robert M. Blue, HOGAN & HARTSON, L.L.P., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Beretta U.S.A. Corporation ("Beretta") appeals the district court's award of summary judgment to The Federal Insurance Company ("Federal") and Great Northern Insurance Company ("Great Northern") in a dispute over insurance coverage. Beretta, a Maryland corporation, brought this diversity action in the District of Maryland seeking a declaration that its insurers, Federal and Great Northern, owed it a duty, under general liability and umbrella policies, to defend and indemnify it against pending lawsuits. Federal and Great Northern sought dismissal or, in the alternative, summary judgment, and Beretta also sought summary judgment. The district court, which possessed jurisdiction under 28 U.S.C. § 1332(a), ruled in favor of Federal and Great Northern. Beretta appeals the adverse ruling, and we possess jurisdiction pursuant to 28 U.S.C. § 1291. As explained below, we affirm.

I.

A.

The facts relevant to our inquiry are fully described in the ruling of the district court, embodied in its Memorandum of September 29, 2000, No. CCB-99-2798 (the "D. Ct. Memo."). Both Federal and

Great Northern issued annual commercial insurance policies (the "Primary Policies") to Beretta, effective for the aggregate period from July 31, 1990, through December 31, 1999. The Primary Policies each provided, inter alia, that Federal and Great Northern would pay "damages the insured [Beretta] becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for: bodily injury or property damage . . . caused by an occurrence; . . . or personal injury . . . or advertising injury." J.A. 94, 220. Central to the controversy in this litigation is the "Products-Completed Operations Hazard" exclusion (the "Exclusion"), found in each policy, which is defined to include, inter alia, "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product . . . except: products that are still in your physical possession." J.A. 111, 237.

In addition to the Primary Policies, Federal and Great Northern also issued annual umbrella and excess policies to Beretta for the aggregate period from July 31, 1992, through December 31, 1999 (the "Umbrella Policies"). The Declaration page of each Umbrella Policy also contained, *in haec verba*, the Exclusion, specifically stating that the Umbrella Policies did not provide coverage to Beretta for any liability arising out of the Exclusion.

Prior to initiating this litigation, Beretta notified both Federal and Great Northern that thirteen lawsuits had been filed against it — twelve being brought by municipal governments in various parts of the United States, and the thirteenth being a class action (the "Underlying Actions"). The Underlying Actions each allege, inter alia, that Beretta engaged in the "negligent marketing and distribution of guns and public nuisance, and seek to recover expenses allegedly incurred in treating and caring for people who have suffered gunshot injuries." J.A. 9. Both Federal and Great Northern denied coverage to Beretta under the Primary Policies and the Umbrella Policies (the "Policies"). Beretta maintained that the denials of coverage were improper, and it sought a declaratory judgment awarding insurance coverage for the claims, except the product liability claims, made in the Underlying Actions (the "Claims").[1]

---

[1] The Underlying Actions also assert product liability claims for Beretta's failure to make its firearms safe and to prevent foreseeable misuse

## B.

Upon consideration of the written submissions and oral argument, the district court awarded summary judgment to Federal and Great Northern. The court determined that the Claims involved bodily injury or property damage that occurred away from Beretta's premises and that "arose out of" Beretta's product. Accordingly, it concluded that coverage of the Claims was precluded by the terms of the Exclusion, and that, under Maryland law, neither Federal nor Great Northern had any duty to defend or indemnify Beretta.

The parties agree that the first prong of the Exclusion is satisfied; that is, the damages sought in the Claims occurred away from Beretta's premises. Thus, as the district court recognized, the central question for our consideration and determination is the meaning, under Maryland law, of the phrase "arising out of," as contained in the Exclusion. Beretta contends that this phrase limits the scope of the Exclusion to allegations involving the dangerous and defective nature of Beretta's products and its failure to warn of those dangers. Federal and Great Northern, in contrast, maintain that the Exclusion is not limited to the product liability claims.

## II.

We must decide whether the district court erred in concluding that the Claims fell under the provisions of the Exclusion, and in granting summary judgment to Federal and Great Northern. Our standard for review is plenary; we review an award of summary judgment *de novo*. *Dalton v. Capital Assocs. Indus., Inc.*, 2001 WL 797752, at *3 (4th Cir. July 16, 2001); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 538 (4th Cir. 1997); *Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996).

---

because Beretta failed to use modern technology to incorporate safety devices that would prevent its firearms from being used by children and unauthorized persons. At oral argument, Beretta conceded that the product liability claims fall within the terms of the Exclusion, and thus are not covered by the Policies. There is accordingly no issue on appeal concerning coverage for product liability claims.

## III.

## A.

After deciding that Maryland law is controlling, *see Assicurazioni Generali v. Neil*, 160 F.3d 997, 1000 (4th Cir. 1998), the district court concluded that Maryland courts have interpreted broadly the policy phrase "arising out of." "The words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like." *N. Assurance Co. of Am. v. EDP Floors, Inc.*, 533 A.2d 682, 688 (Md. 1987). In other words, the phrase "arising out of" implies only "but for" causation. *Mass Transit Admin. v. CSX Transp., Inc.*, 708 A.2d 298, 307 (Md. 1998). Accordingly, the district court reasoned that the Exclusion applied to the Claims and that Beretta was not entitled to indemnification or defense under the Policies.

In reaching its conclusion, the district court found instructive the *EDP Floors* decision of Maryland's highest court. In *EDP Floors*, the Court of Appeals of Maryland interpreted a policy provision that excluded coverage for "bodily injury . . . arising out of . . . loading or unloading of [a truck]." *EDP Floors*, 533 A.2d at 686. The court ruled that the insurer had properly denied coverage to its insured for a claim of negligent hiring, supervision, and retention of an employee who was intoxicated on the job and who injured the plaintiff by his actions during the unloading of a truck. *Id.* at 686-89. The court explained that

> if [the plaintiff's] bodily injury arose out of EDP's employee's unloading of the truck, then that injury is excluded from coverage. This is so regardless of whether the injury may also be said to have arisen out of other causes further back in the sequence of events, such as the employee's consumption of alcohol, or the employer's negligent failure to supervise the employee. *The exclusion also applies irrespective of the theory of liability by which [the plaintiff] seeks redress for his injury.*

*Id.* at 688-89 (emphasis added).

Applying the reasoning of *EDP Floors*, the district court concluded that the Exclusion applies to the Claims because, regardless of whether the injuries involved could also be said to arise from Beretta's negligent marketing and distribution of its products, the "but for" cause of the injuries in the Claims arose out of Beretta's product. On appeal, Beretta asserts that the district court's analysis is incorrect. It contends that Maryland law does not permit a court to look beyond the allegations in the Claims. As we have noted, the *EDP Floors* decision renders this position untenable, because "the theory of liability by which [the plaintiff] seeks redress" is irrelevant. *Id.* at 689.

B.

Next, Beretta maintains that the district court erred when it rejected Beretta's contention concerning the Exclusion's plain meaning. It asserts that, under Maryland law, the Exclusion, by its plain meaning, applies only to injuries caused by defective products, in that a reasonably prudent layperson would believe an injury arises out of a product only if a product defect causes the injury.

> In analyzing that contention, it is first necessary to examine the language of the policy itself. As noted, the [Exclusion] excludes coverage for all bodily injury . . . occurring away from premises you own or rent and arising out of your product . . . . Nothing in that language supports the proposition that the exclusion applies only to defective products.

D. Ct. Memo., at 13 (internal citations omitted). Moreover, the district court found additional support in *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Insurance Co.*, 220 F.3d 1 (1st Cir. 2000), a First Circuit decision addressing a similar appeal by a firearms distributor.[2] *Brazas*, 220 F.3d at 1-4. The court, under Massachusetts law, "applied principles of insurance contract construction virtually identical to the principles applied under Maryland law," and ruled that "the plain language of the exclusion was not limited to defective products

---

[2]The theories of liability asserted against the firearms distributor in *Brazas* were for negligent and willful misconduct in the distribution, marketing, and advertising of excessive numbers of firearms, which allegedly resulted in bodily injuries to the plaintiffs.

claims."[3] D. Ct. Memo., at 13 (citing *Brazas*, 220 F.3d at 4-5). The district court agreed with the analysis made by the First Circuit; we agree as well. *Id.*

## C.

Finally, Beretta contends that the district court erred by not considering extrinsic evidence of the Exclusion's meaning. The district court found no merit in this position because, under Maryland law, "[o]nly if a policy is ambiguous should the court consider extrinsic and parol evidence to determine the intention of the parties." *Id.* at 9 (citing *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619 (Md. 1995)). Under Maryland law, "[w]hether ambiguity exists depends on whether 'the language in an insurance policy suggests more than one meaning to a reasonably prudent lay person'". *Id.* (quoting *Sullins*, 667 A.2d at 619.) The district court concluded that the Exclusion was not ambiguous because, as Maryland's courts have repeatedly held, the text of an insurance contract will be accorded its usual, ordinary, and accepted meaning, unless the evidence demonstrates that the parties intended otherwise. *Neil*, 160 F.3d at 1001 (citing *Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989)) (internal quotations omitted).[4]

Beretta has failed to demonstrate that the parties to the Policies intended the phrase "arising out of," or the other provisions of the Exclusion, as having anything other than their usual, ordinary, and accepted meanings. Although Beretta asserts several separate bases in its effort to convince us otherwise, each misses the mark.

First, Beretta suggests the Exclusion is ambiguous because it has historically been interpreted by other courts, and understood in the

---

[3]In Massachusetts, the phrase "arising out of" denotes an intermediate standard of causation between proximate and "but for" causation. *Brazas*, 220 F.3d at 4. Therefore, in *Brazas* a more demanding standard was applied by the First Circuit than the "but for" standard mandated by Maryland law

[4]In *Brazas*, the First Circuit concluded that "[w]here, as here, the language of the exclusion provision is unambiguous, the text should be given its plain meaning. In this case, the plain meaning of the exclusion is that it applies to all product-related injuries." *Brazas*, 220 F.3d at 6.

insurance industry, to apply only to defective product and failure-to-warn claims, rather than negligent sale claims. While Beretta asserts that a number of decisions from other jurisdictions support its position,[5] "that fact cannot alter the application of clearly established Maryland law, which this court is bound to follow." D. Ct. Memo., at 13. It is manifest that, under Maryland law, the phrase "arising out of" is to be interpreted broadly. *EDP Floors*, 533 A.2d at 688.

Second, Beretta contends that the Exclusion's title (Products-Completed Operations Hazard) in and of itself creates ambiguity. However, to the extent the title of the Exclusion might be considered ambiguous, such a construction would be insufficient to render the Exclusion ambiguous. *Bernhardt v. Hartford Fire Ins. Co.*, 648 A.2d 1047, 1051 (Md. App. 1994) (finding the title endorsement — "pollution exclusion" — not to be ambiguous because the provisions of the insurance contract were quite specific).

Third, Beretta maintains that the conflicting decisions from other jurisdictions concerning the scope of the Exclusion also constitute evidence of ambiguity. *See supra* note 5. In Maryland, however, a mere conflict in judicial interpretation is not dispositive on the issue of ambiguity, but is only a factor to be considered. *Sullins*, 667 A.2d at 624. In any event, "conflicting interpretations from other jurisdictions do not create ambiguity where Maryland courts have adopted a definitive interpretation under Maryland law." D. Ct. Memo., at 14 (citing *Willis v. Allstate Ins. Co.*, 591 A.2d 896, 900-02 (Md. App. 1991); *McCloskey v. Republic Ins. Co.*, 559 A.2d 385, 387 (Md. App. 1989)). Maryland courts have adopted a definitive interpretation of the phrase "arising out of." In this circumstance, Beretta cannot rely on contrary decisions of other jurisdictions to create an ambiguity in the language of the Exclusion.

---

[5]*See, e.g., Scarborough v. N. Assurance Co. of Am.*, 718 F.2d 130, 136 (5th Cir. 1983) (applying Louisiana law); *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Lyon*, 528 S.W.2d 932, 934 (Ark. 1975); *Lessak v. Metro. Cas. Ins. Co.*, 151 N.E.2d 730, 735 (Ohio 1958); *Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848 851 (Tex. Ct. App. 1987). Several of the decisions on which Beretta relies are distinguishable because either the policy language at issue was different from that involved in this case, or the decisions did not involve interpreting of the phrase "arising out of."

Finally, Beretta invokes the principle embodied in *Stanley v. American Motorist Insurance Co.*, 73 A.2d 1 (Md. App. 1950), that "parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states." *Id.* at 4. This point is of no assistance to Beretta, however, because the provisions of the Exclusion have not been uniformly construed. *See, e.g.*, *Cobbins v. Gen. Accident Fire & Life Assurance Corp., Ltd.*, 290 N.E.2d 873, 877 (Ill. 1972) ("The definition of the 'products' hazard does not permit the interpretation that it applies only to the typical product-liability or defective-product case. It is not so limited."); *see also Parma Seed, Inc. v. Gen. Ins. Co.*, 496 P.2d 281, 286 (Idaho 1972); *Tiano v. Aetna Cas. and Sur. Co.*, 301 N.W.2d 476, 480 (Mich. Ct. App. 1980); *Pennsylvania Gen. Ins. Co. v. Kielon*, 492 N.Y.S.2d 502, 503-04 (N.Y. App. Div. 1985).

## IV.

Pursuant to the foregoing, we find no error in the district court's interpretation and application of Maryland law. We accordingly adopt its well-reasoned decision, and we affirm. *Beretta U.S.A. Corp. v. Federal Ins. Co.*, No. CCB-99-2798 (Sept. 29, 2000).

*AFFIRMED*

WILKINSON, Chief Judge, concurring in the judgment:

I concur in the judgment here, but I write separately because I think the case is closer than the majority acknowledges.

In the abstract, it is reasonable to contend, as appellant does, that the language "arising out of your product" in the exclusion applies only to traditional products liability actions. If an injury is inflicted by a person with a non-defective gun or knife, one would not normally think of the gun or knife as having inflicted the injury. Rather, one would typically view the person who misused the weapon as having inflicted the injury. That is, the injury would be said to have "arisen out of" the wrongful act of the person, not the weapon itself.

In many jurisdictions, this would be a prevailing argument, and coverage for the insured manufacturer would lie. The question here is whether Maryland courts have interpreted the words "arising out of" in such a manner as to sweep this argument away. Analytically, they have. It is only because Maryland assigns to the words "arising out of" an extraordinary breadth that the exclusion can be interpreted as the district court did. The Maryland courts have interpreted "arising out of" to express the expansive concept of but-for causation, and they have done this repeatedly and in a variety of different settings and contexts. *See, e.g.*, *Mass Transit Admin. v. CSX Transp., Inc.*, 708 A.2d 298, 307 (Md. 1998); *N. Assurance Co. of Am. v. EDP Floors, Inc.*, 533 A.2d 682, 688-89 (Md. 1987); *Nat'l Indem. Co. v. Ewing*, 200 A.2d 680, 682 (Md. 1964). Under Maryland law, one cannot escape the fact that, "but for" appellant's product, the harms alleged in the underlying complaints would not have occurred.

Secondly, if the adjective "defective" had been used to modify the noun "product," the exclusion could likewise be interpreted in the manner that appellant suggests. The exclusion would then plainly be limited to traditional products liability suits. I do not believe, however, that courts possess the authority to add that word to the contract of insurance negotiated by the parties.

In sum, had another state's law been controlling or had the exclusion contained a single additional word, the result might well have been different. On the basis of Maryland law and under this contract, however, I think an affirmance is the proper course.