533 A.2d 682

**NORTHERN ASSURANCE COMPANY OF AMERICA et al.**

v.

**EDP FLOORS, INC.**

Nos. 145, 156, Sept. Term, 1986.

Court of Appeals of Maryland.

Nov. 25, 1987.

Daniel Karp (Allen, Thieblot & Alexander, on brief), Baltimore, for appellant.

Russell J. Pope and Kristine A. Crosswhite (James R. Eyler, Amy S. Owen and Miles & Stockbridge, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH,\* McAULIFFE and ADKINS, JJ.

---

\* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

MURPHY, Chief Judge.

This case involves two appeals. The first, No. 145, concerns the final judgment rule; the second, No. 156, raises issues relating to an insurer's duty to defend its insured and damages from an alleged breach of that duty.

## I

On April 12, 1984, EDP Floors, Inc. (EDP) planned to deliver a load of floor tile to a jobsite. One of EDP's employees, a helper on the delivery truck, arrived for work that day with bloodshot eyes; his speech was slurred and he smelled of alcohol. Because no one else was available, EDP allowed the helper to accompany the driver. Between EDP's warehouse and the jobsite, the driver and helper stopped for lunch, and the helper consumed additional alcoholic beverages. When they arrived at the jobsite, the driver determined that the helper was too drunk to be of any assistance; thus, he obtained help from others at the jobsite, including Jeffrey Davis, the plaintiff in the underlying tort suit. At some point during the unloading of the floor tiles, the helper returned to the truck and operated the hydraulic lift at the rear of the truck. The floor tiles fell off the lift and injured Davis who subsequently sued EDP in the Circuit Court for Prince George's County. Davis alleged EDP's vicarious liability for the helper's negligence in Count I, direct liability for negligent hiring and retention and negligent supervision in Counts II and III, and liability for punitive damages in Count IV.[1]

EDP notified both its automobile and general liability insurance carriers of the suit and requested a defense. State Farm, the automobile carrier, entered the case, but apparently has consistently disputed the extent of its cover-

---

1. For the purposes of this appeal, we accept as true the allegations in the underlying tort action.

age.[2] Northern Assurance Company (NAC), the general business liability carrier, denied coverage. Davis sued NAC and EDP, seeking a declaratory judgment that NAC owed EDP a defense in the underlying tort suit as well as a duty to indemnify EDP for any judgment against it. NAC moved for dismissal or for summary judgment on the grounds that Davis had no standing to maintain the action, that no justiciable controversy existed, and that NAC's policy did not cover the alleged torts. EDP then filed a cross-claim against NAC, seeking a declaration that NAC had a duty to defend EDP, to indemnify it, and to pay its attorneys' fees in the declaratory judgment action. NAC's answer to the cross-claim incorporated its earlier motion for dismissal or summary judgment. EDP also filed a motion for summary judgment.

On August 26, 1986, the trial court (Briscoe, J.) held a hearing on the various motions. It granted the motion to dismiss as to Davis, finding that he had no standing to seek a declaratory judgment that NAC had a duty to defend EDP. Davis did not appeal that ruling. The court also determined that NAC did have a duty to defend EDP with respect to Counts II–IV and pay any resulting judgment against EDP on those counts. The court, after hearing from counsel on the issue of attorneys' fees, reserved its ruling on that question.[3] The Court of Special Appeals, citing Maryland Rule 2–602, dismissed NAC's appeal from the trial court's judgment. We granted certiorari to determine whether the intermediate appellate court erred in dismissing the appeal (No. 145).

In the meantime, EDP filed a memorandum in support of its request for attorneys' fees. NAC filed a request for

---

**2.** State Farm did not formally notify its insured, EDP, that it was defending under a reservation of rights as to Counts II–IV until the declaratory judgment action involved in this appeal had concluded.

**3.** It is not clear from the record whether the court reserved its ruling on the availability and amount of attorneys' fees or only on the amount. Our disposition of the appeal in No. 145 makes it unnecessary to determine what the court intended by its ruling.

discovery as well as a memorandum opposing the fee petition. When EDP objected to the discovery requests, NAC also filed a motion to compel discovery. At a hearing on December 11, 1986, the trial court heard argument on the issue of fees and NAC's discovery requests; it denied NAC's discovery requests and granted attorneys' fees to EDP in the amount of $7,488.20. NAC then appealed from that judgment. We granted certiorari (No. 156) prior to argument in the Court of Special Appeals and consolidated the argument with No. 145.

## II

■ Here counsel fees were sought as damages for breach of the insurance contract. That breach of contract claim was not finally adjudiciated until the counsel fee was determined. Md. Rule 887 provides that upon an appeal from a final judgment, every interlocutory order entered in the action is open to review. *See Cant v. Bartlett*, 292 Md. 611, 618–19, 440 A.2d 388 (1982). The merits of the trial court's August 26 orders, therefore, are properly part of the appeal in No. 156. Hence, the appeal in No. 145 is moot and will be dismissed.

## III

The appeal in No. 156 presents three principal issues: (1) whether a justiciable controversy exists between NAC and EDP, (2) whether NAC has a duty to defend EDP against Counts II–IV and to pay resulting judgment on these counts, and (3) whether EDP was entitled to attorneys' fees in the declaratory judgment action.

## (A)

### *Justiciability*

■ NAC contends that the trial court has no jurisdiction to enter a declaratory judgment in this case because no justiciable controversy existed between NAC and EDP.

Alternatively, NAC claims that the trial court abused its discretion in entering a declaratory judgment.

 A circuit court has jurisdiction to construe a written contract and declare the rights of the parties under it. Maryland Code (1984 Repl. Vol.) §§ 3–402, –406 of the Courts and Judicial Proceedings Article. The court may grant this discretionary relief in order to terminate an actual controversy if "[a] party asserts a legal ... right ... [that] is challenged or denied by an adversary party, who also has or asserts a concrete interest in it." § 3–409(a)(3) of the Courts Article. Thus, when interested parties advance adverse claims upon a state of facts that has accrued, a justiciable controversy exists, and a trial court may enter a declaratory judgment. *Hatt v. Anderson,* 297 Md. 42, 45–46, 464 A.2d 1076 (1983); *Reyes v. Prince George's County,* 281 Md. 279, 288, 380 A.2d 12 (1977).

These requirements were satisfied in this case. EDP had an insurance contract with NAC that required NAC to defend EDP in actions asserting claims within the policy coverage. It notified NAC of the suit filed by Jeffrey Davis and requested a defense; NAC refused. According to NAC's reading of the policy, Davis's claim was excluded from coverage. Because EDP disagreed with this policy interpretation, it requested the trial court to declare its rights under the insurance policy.

 Occasionally a declaratory judgment action may involve questions to be decided in another pending action. In those cases, it may be an abuse of discretion for the trial court to resolve those issues in the declaratory judgment action. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 405–06, 347 A.2d 842 (1975). This principle, however, does not apply to this case. EDP sought an interpretation of its insurance policy. It had a material interest in obtaining this interpretation, for if the contract were given one construction NAC would be required to defend EDP in Davis's tort action; if it were given another, EDP would need to rely exclusively on its automobile liability insurance carrier

for a defense on all four counts in Davis's complaint. The automobile insurance carrier, however, would have less incentive to defend the negligent supervision and negligent hiring and retention counts, for which the carrier's coverage was unclear, than the vicarious liability count, for which coverage was not doubted. Hence EDP had reasonable grounds to want the contract interpreted to require NAC to provide a defense. The outcome of Davis's pending tort action had no bearing on that issue.[4] Thus, the trial court properly exercised its jurisdiction in the declaratory judgment action.

(B)

*Duty to Defend*

 The insurance policy issued by NAC to EDP provides in Section II:

"A. **WHAT IS COVERED**

The following coverages apply only when caused by an *occurrence* insured by this policy and not otherwise excluded:

1. **BODILY INJURY AND PROPERTY DAMAGE LIABILITY.** We cover all sums which the *insured* is legally required to pay as damages because of *bodily injury* or *property damage.*

. . . .

B. **WHAT IS NOT COVERED**

Coverage provided under A. WHAT IS COVERED does not apply as described below:

. . . .

2. AUTOMOBILES, AIRCRAFT AND WATERCRAFT. Coverage does not apply to *bodily injury* or

---

**4.** According to NAC, the tort action may absolve EDP of liability for negligent hiring, retention, and supervision. Thus, it argues, the issue of coverage may be moot. The fact that EDP may win in the tort action, however, does not affect EDP's rights under the insurance contract.

*property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of:

a. any automobile, aircraft or watercraft owned or operated by, or rented or loaned to, any insured, or

b. any other automobile, aircraft or watercraft owned or operated by a person in the course of his employment by any insured." (Emphasis in original policy language.)

The policy also contains the following definitions in Section 1:

"Automobile means a land motor vehicle, trailer or semi-trailer, designed to travel on public roads (including any attached machinery or apparatus), but does not include *mobile equipment.*

. . . .

Loading Or Unloading means, with respect to an *automobile,* the handling of property:

1. after it is moved from the place where it is accepted for movement into or onto an *automobile;*

2. while it is in or on an *automobile;* or

3. while it is being moved from an *automobile* to the place where it is finally delivered." (Emphasis in original policy language.)

EDP contends that the exclusion for "bodily injury ... arising out of the ... loading or unloading of [a truck]" applies only to EDP's alleged vicarious liability for the negligence of its employee. Because the other counts allege negligence by EDP apart from its employee's negligence, EDP asserts that the NAC policy covers these counts. NAC, on the other hand, contends that all counts in Davis's tort complaint were within the excluded coverage because the allegedly negligent unloading of the truck by EDP's employee was a crucial and necessary link between Davis's injury and EDP's liability under each count.

We note at the outset that EDP's attempt to apply the "potentiality rule" stated in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975), to this case is

misguided. This rule imposes on the insurer a duty to defend if the allegations of the underlying tort suit raise a "potentiality" that coverage exists. *St. Paul Fire & Mar. Ins. v. Pryseski*, 292 Md. 187, 193–94, 438 A.2d 282 (1981). As we stated in *Pryseski*, however, when, as here, the question of coverage or exclusion under the language of the insurance, policy is separate and distinct from the issues involved in the tort suit, the "potentiality rule" normally has no application. *Id.* at 194, 438 A.2d 282. To apply the "potentiality rule" in this case as EDP seeks would in effect create a canon of insurance contract interpretation that gives every benefit of the doubt to the insured, in contravention of our many holdings that the unambiguous language in an insurance contract is to be afforded its ordinary and accepted meaning. *See DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 721, 475 A.2d 454, 460–61 (1984).

Courts which have considered the issue *sub judice* and cognate issues concerning the interpretation of exclusionary clauses in insurance contracts have reached varying results. *See generally* Annotation, *Construction and Effect of Provision Excluding Liability for Automobile–Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy*, 6 A.L.R.4th 555 (1981 and Supp. 1986). The prevailing rationale among the many courts that have upheld exclusion in negligent entrustment and negligent supervision cases has been that though the vehicle use and employer or parental negligence components of the causes of action may involve separate acts, the vehicle use component is essential to establish the insured's liability, and if it is excluded no liability arises for which the insurer is responsible. *See, e.g., Cooter v. State Farm Fire & Cas. Co.*, 344 So.2d 496 (Ala.1977); *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978); *Michigan Mut. Ins. Co. v. Sunstrum*, 111 Mich. App. 98, 315 N.W.2d 154 (1981); *Fillmore v. Iowa Nat. Mut. Ins. Co.*, 344 N.W.2d 875 (Minn.Ct.App.1984); *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787 (Tex.1982); *Farmer's Ins. Group v. Johnson*, 43 Wash.App.

39, 715 P.2d 144 (1986). *Ruggerio v. Aetna Life & Casualty Co.,* 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985), a case involving a negligent hiring claim, also upheld exclusion on this rationale. The general trend of authority with respect to negligent entrustment and negligent supervision cases is clearly toward upholding exclusion. *See generally* Annotation, *supra,* § 6 (Supp.1986).

Quite recently, in *Rubins Contractors, Inc. v. Lumbermens Mut. Ins.,* 821 F.2d 671 (D.C.Cir.1987), the court in a declaratory judgment action was required to interpret Maryland law on facts similar to those here involved. There, the insured, Rubins Contractors, was sued for negligent entrustment of a vehicle to one of its employees. Both Rubins' automobile insurer and its business liability insurer denied any obligation to indemnify Rubins for the negligent entrustment claim, and the business liability carrier denied any obligation to provide a defense. The business carrier's policy contained an exclusion clause virtually identical to that contained in the NAC policy. Stating that "[t]he view rejecting exclusion seems to us to require a torturing of the language in which the Maryland courts would not be likely to indulge," *id.* at 676, the court found the exclusion clause applicable and held the automobile carrier, and not the business carrier, responsible for providing coverage.

A few courts that have denied exclusion have relied partly on canons of insurance contract interpretation that construe the policy most strictly against the insurer, either because the exclusion clause is held to be ambiguous, *United Fire & Cas. Co., Cedar Rapids v. Day,* 657 P.2d 981 (Colo.App.1982), or because exclusion clauses are construed more strictly than coverage clauses, *State Farm Mutual Automobile Ins. Co. v. Partridge,* 10 Cal.3d 94, 514 P.2d 123, 128, 109 Cal.Rptr. 811, 816 (1973); *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514, 522 (1976). We do not find the exclusion clause in this case ambiguous, nor does Maryland construe exclusion clauses more strictly than coverage clauses; thus, these cases, insofar as they rely on the above grounds, are inapposite.

A more prevalent rationale for denying exclusion on facts analogous to those before us is the view taken by a number of courts that when vehicle use and nonvehicle use factors contribute to an injury, these separate factors are to be regarded as concurrent and independent causes. Thus, these courts reason, liability has not arisen solely from the use of the vehicle, which in their view the exclusion clause requires. *See, e.g., Partridge, supra; U.S. Fidelity & Guaranty Co. v. State Farm,* 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982); *Houser v. Gilbert,* 389 N.W.2d 626 (N.D.1986).

Both parties purport to find support for their positions in *Aragona v. St. Paul Fire & Mar. Ins.,* 281 Md. 371, 378 A.2d 1346 (1977). Although not directly on point, *Aragona* involved an analogous question of insurance policy interpretation. In that case, Gordon, a lawyer, misappropriated client funds without his partner's knowledge. The clients sued the partner, Myers, to recover these funds, alleging vicarious liability and negligent failure to discover Gordon's malefactions. The jury found Myers negligent. *Aragona, supra,* at 372–73, 378 A.2d 1346.

> Myers' professional malpractice insurer agreed to pay " 'all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable....' "

*Id.* at 372, 378 A.2d 1346. The policy expressly excluded from coverage " 'any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee; ....' "

We concluded that this insurance policy did not cover Myers' negligent failure to discover his partner's misappropriations. Finding no ambiguity in the policy language, we defined the issue as "whether, in view of the plain language of the policy, the exclusionary clause applies where, as here, one of several causes contributing to the loss was not

within the exclusion." *Id.* at 375, 378 A.2d 1346. After reviewing several cases from other jurisdictions, we noted that many courts expressed the grounds of their decisions in terms of proximate, efficient, dominant, or direct causation; if such causes were within the exclusion, these courts held, the policy did not cover the loss. *Id.* at 378–79, 378 A.2d 1346. We noted further that, employing the language of proximate causation, the dishonest act of Myers' partner could be characterized as the direct and precipitating cause of the loss and Myers' negligence as merely a remote and indirect cause. *Id.* at 379, 378 A.2d 1346. We made clear, however, that our decision holding the policy exclusion applicable rested finally, not on a proximate cause analysis, but rather on our judgment that, construing the language in the insurance contract as a whole, the parties intended any loss resulting from any dishonest or criminal act of the insured's partner to be excluded from coverage. *Id.* In fact, we stated a caveat concerning the indiscriminate use of principles of causation:

"[T]he terms of the policy determine the reach and extent of its coverage. In this connection, principles of causation will not be applied to defeat the intent of the parties, as manifested in the insurance contract; indeed, as our predecessors noted in *Automobile Ins. Co. v. Thomas, supra* (153 Md. [253] at 257 [138 A. 33 (1927) ] ), general definitions of proximate causation afford little aid in determining whether a particular loss was intended to be covered under the insurance policy." *Id.* at 379, 378 A.2d 1346.

We thus cautioned in *Aragona* against the inappropriate use of principles of causation—an important consideration here, for much of EDP's argument, and much of the reasoning of the courts from other jurisdictions that tend to support its position, *e.g., Houser, supra,* is grounded in causation analysis. EDP asserts, for example, that with respect to Davis's negligent supervision and negligent hiring and retention counts, the separate negligence of EDP itself should be viewed as the proximate cause of Davis's

injury. It claims that since the exclusion clause should be read as requiring that the unloading of the truck, and not a concurring nonvehicular cause, be the proximate cause of the injury, the exclusion assertedly is inapplicable. Alternatively, it suggests that the separate negligence of EDP's employee and of EDP itself should be viewed as concurrent causes of Davis's injury. In such cases, EDP argues, the policy exclusion is ineffective to defeat coverage.

These arguments are unconvincing in light of the terms of the policy exclusion which flatly provide that there is no coverage for injuries arising out of the operation or use of a motor vehicle, including the loading or unloading thereof. The words "arising out of" must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like. *See Baca v. New Mexico State Highway Dept.*, 82 N.M. 689, 486 P.2d 625, 628 (1971); *Lawver, supra*, 238 N.W.2d at 518; Webster's Third New International Dictionary 117 (1961). While these words plainly import a causal relation of some kind, read in context, they do not require that the unloading of the truck be the sole "arising out of" cause of the injury; they require only that the injury arise out of the unloading of the vehicle. Therefore, if Davis's bodily injury arose out of EDP's employee's unloading of the truck, then that injury is excluded from coverage. This is so regardless of whether the injury may also be said to have arisen out of other causes further back in the sequence of events, such as the employee's consumption of alcohol, or the employer's negligent failure to supervise the employee. The exclusion also applies irrespective of the theory of liability by which Davis seeks redress for his injury, as the policy exclusion is not concerned with theories of liability. Rather, the policy insures against certain types of damages or injuries, specifically excluding injuries arising out of the operation, use or unloading of EDP's vehicle.

As we see it, the language in the exclusionary clause clearly focuses the "arising out of" inquiry on the instrumentality of the injury, *i.e.*, upon the truck and its unload-

ing. When, as here, there is no ambiguity in the policy exclusion, the first principle of construction of insurance policies in Maryland requires that we apply the terms of the contract as written. *See Mut. Fire, Marine & Inland Ins. v. Vollmer*, 306 Md. 243, 250, 508 A.2d 130 (1986); *DeJarnette, supra*, 299 Md. at 721, 475 A.2d 454. To apply either a proximate or concurrent cause analysis in the interpretation of the policy exclusion, as EDP urges, would severely strain its plain import and would result in coverage being provided, contrary to the intention of the parties, for acts inseparably associated with the operation, use or unloading of the truck.

In concluding that the exclusionary provision in the NAC policy is applicable in this case, we have carefully considered *Gamble–Skogmo, Inc. v. Saint Paul Mercury Indem. Co.*, 282 Minn. 91, 64 N.W.2d 380 (1954), upon which EDP places considerable reliance. There, a farm equipment merchant's automobile liability policy covered bodily injury "arising out of the ownership, maintenance, or use of any automobile, including the loading and unloading thereof." 64 N.W.2d at 385. The court held that an injury suffered by a customer's employee while assisting the merchant's employee in assembling a farm implement, preparatory to its being unloaded from the platform of the merchant's truck, was the responsibility of the merchant's general liability insurer and not its automobile insurance carrier. The trial of the tort action preceded the determination in *Gamble–Skogmo* as to which insurer was responsible for the injury; in the tort case, the jury specifically found that the negligence which resulted in the injury was wholly attributable to the merchant's negligent failure to give its own employee, who was found not negligent, proper instructions for assembling the farm implement. The court in *Gamble–Skogmo* concluded that the injury was "entirely disassociated from the operation of the automobile-truck or its unloading," 64 N.W.2d at 390, and thus was a general business risk peril not covered by the automobile insurance carrier. The injury, the court said, was "not caused by any

negligent act occurring at the time and place of the process of unloading." *Id.* 64 N.W.2d at 391.

*Gamble–Skogmo* is plainly inapposite on its facts, as the predicate of its reasoning was that the merchant's inadequate instructions were the cause of the injury. In the present case, it is clear that the negligent unloading of the truck by EDP's employee was, at least, an "arising out of" cause of Davis's injury. In this regard, we note that several cases decided after *Gamble–Skogmo*, including cases in Minnesota, take the view that the rationale of *Gamble–Skogmo* is not applicable when at least a minimal "arising out of" causal relation is present between the unloading and the injury. *See Canadian Indemnity Co. v. State Automobile Ins. Ass'n,* 174 F.Supp. 71, 79 (D.Or. 1959) ("The plain implication found in *Gamble–Skogmo* is that the negligence of the employer-insured in failing to properly instruct its employee, being the sole cause of the injury, is not covered by automobile liability policy, but the result would be otherwise had the injury been caused by either the sole or participating negligence of the employee...."); *American Auto. Ins. Co. v. Transport Indem. Co.,* 200 Cal.App.2d 543, 555–56, 19 Cal.Rptr. 558, 566 (1962); *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817, 823 (1977).

## IV

■ Our cases establish that an insurance company is liable for its insured's reasonable attorneys' fees in a declaratory judgment action if it wrongfully refuses to defend the insured. *Continental Casualty v. Board of Educ.,* 302 Md. 516, 537, 489 A.2d 536 (1985); *Bankers & Ship. Ins. v. Electro Enter.,* 287 Md. 641, 648, 415 A.2d 278 (1980). The obvious converse proposition is that if the insurer's refusal to defend was not wrongful, it is not liable for attorneys' fees. NAC's refusal to defend here was not wrongful, and thus the trial court's award of attorneys' fees to EDP must be reversed.

AS TO NO. 145: JUDGMENT DISMISSING THE APPEAL AFFIRMED; COSTS TO BE PAID BY THE APPELLEE.

AS TO NO. 156: JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE APPELLEE.