**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1473**

TRICE, GEARY & MYERS, LLC; KEVIN MYERS, CPA,

                Plaintiffs - Appellants,

        v.

CAMICO MUTUAL INSURANCE COMPANY,

                Defendant – Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    William  D.  Quarles,  Jr.,  District
Judge.  (1:09-cv-02754-WDQ)

Argued:  September 21, 2011        Decided:  December 22, 2011

Before GREGORY, WYNN, and DIAZ, Circuit Judges.

Reversed and remanded by unpublished opinion.  Judge Wynn wrote
the opinion, in which Judge Gregory and Judge Diaz concurred.

**ARGUED**:  Kamil  Ismail,  GOODELL  DEVRIES  LEECH  &  DANN,  LLP,
Baltimore, Maryland, for Appellants.   Thomas S. Schaufelberger,
SAUL  EWING,  LLP,  Washington,  D.C.,  for  Appellee.    **ON  BRIEF**:
Joseph B. Wolf, GOODELL DEVRIES LEECH & DANN, LLP, Baltimore,
Maryland, for Appellants.   Paul A. Fitzsimmons, SAUL EWING, LLP,
Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

In this appeal, accounting firm Trice, Geary & Myers, LLC ("TGM") and Kevin Myers, CPA ("Myers") contend that their professional liability insurer CAMICO Mutual Insurance Company ("CAMICO Insurance") breached its duty to provide a defense in connection with three state court lawsuits filed against them. CAMICO Insurance responds that the claims arose from TGM's and Myers's work as insurance agents and that it was thus not obligated to provide coverage because the policy excluded claims "in connection with or arising out of any act, error or omission by any Insured in his/her capacity as an [insurance] agent or broker." J.A. 40.

However, the underlying actions allege that TGM and Myers rendered substandard tax and accounting advice. Because these claims raise a potentiality that there is coverage under the professional liability policy, we conclude that CAMICO Insurance's duty to defend is triggered. We therefore reverse the district court's grant of summary judgment in favor of CAMICO Insurance and remand for further proceedings. Furthermore, because any determination as to whether CAMICO Insurance has a duty to indemnify TGM and Myers must await the resolution of the underlying actions, we reverse the district court's award of summary judgment in favor of CAMICO Insurance on its Counterclaim.

2

I.

A.    The Accountants Professional Liability Insurance Policy

In 2007, CAMICO Insurance issued a "claims made and reported" Accountants Professional Liability Insurance Policy (the "Policy") to TGM.  J.A. 20.  The Policy, effective from July 1, 2007 to July 1, 2008, insured TGM for claims arising out of professional accounting services.[1]  Myers, a principal of TGM, is an Insured under the Policy.

The Policy's Insuring Agreement provides in pertinent part:

**I. INSURING AGREEMENTS**

**A.    Coverage for Damages and Reporting Requirements**

1.    The Company will pay those sums that an *Insured* becomes legally obligated to pay as *Damages* because of a *Claim* arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services* performed after the *Retroactive Date* and before the end of the *Policy Period . . . .*

J.A. 21.  Additionally, under the Insuring Agreements section of the Policy, CAMICO Insurance "has the right and duty to defend and settle *Claims* alleging *Damages* potentially covered by this Policy, even if the *Claim* is groundless, false or fraudulent." J.A. 21.

---

[1] CAMICO Insurance also issued a second policy, effective July 1, 2008, to July 1, 2009.  The relevant terms of the two policies are identical.

The Policy also defines "*Professional Services*" *as* "any professional services performed by an *Insured* as long as the fees or commissions, if any, or other benefits from such services inure to the benefit of the *Named Insured*[.]" J.A. 26.

Most pertinent to this matter, the Policy includes the following "Special Exclusion Endorsement":

> This policy does not apply to any *Claims* in connection with, arising out of or relating to:
>
> This Policy does not provide insurance for any Insured's professional liability arising from acts, errors or omissions in the rendering or failure to render services as an insurance agent or broker. Therefore, the Company and the Named Insured agree to amend the Policy as follows:
>
> 1. It is hereby agreed that the following sentence is added to Section I. DEFINITIONS, paragraph (n):
>
> Professional Services do not include any professional services performed by an Insured in his/her capacity as an agent or broker for the placement or renewal of insurance products or for the sale of annuities.
>
> 2. It is hereby agreed that the following is added in Section IV. EXCLUSIONS:
>
> This insurance does not apply to any Claim in connection with or arising out of any act, error or omission by any Insured in his/her capacity as an agent or broker for the placement or renewal of insurance products or for the sale of annuities.
>
> It is agreed that the above coverage limitations will not preclude coverage for any Insured's professional liability arising from referring any Person to another insurance agents [sic] for placement or renewal of life insurance products for the sale of annuities.

J.A. 40.

4

B.   The Underlying Actions

1. Ruark Action

In April 2009, Thomas R. Ruark ("Ruark"), Baja Holdings, Inc. ("Baja Holdings"), Baja Holdings, Inc. Defined Benefit Pension Plan ("Baja Defined Benefit Plan"), and Bruce Abresch ("Abresch"), business clients of TGM and Myers (and collectively referred to herein as the "Ruark Companies"), filed a complaint (the "Ruark Action") against Myers and TGM alleging causes of action for negligence and negligent misrepresentation in the provision of professional accounting and tax services. <u>See</u> <u>Ruark v. Myers</u>, Case No. 22-C-09-000708 (Cir. Ct. Wicomico County, Apr. 24, 2009).

The Ruark Action alleged that while "purporting to act as an accountant and tax advisor," Myers recommended that Ruark create the Baja Defined Benefit Plan, which would be wholly funded by a life insurance policy and annuities written by Hartford Life Insurance Company ("Hartford Insurance"). J.A. 44, ¶ 13. Further, according to the complaint, Myers represented that this arrangement would comply with Internal Revenue Code section 412(i). Allegedly in reliance upon this advice, Baja Holdings invested some $14 million in life insurance to fund the Baja Defined Benefit Plan. The Ruark Companies contend that because of Myers's incorrect advice, they

5

were audited by the Internal Revenue Service ("IRS"), incurred substantial related expenses, and expect to have a substantial tax debt.

### 2. Insurance Alternatives' Third-Party Action

The Ruark Companies also filed a suit against Hartford Insurance; Michael A. DiMayo, a Hartford insurance agent; and DiMayo's employer, Insurance Alternatives, Inc. ("Insurance Alternatives") in the Circuit Court for the County of Baltimore ("Hartford Action"). See Ruark v. Hartford Life & Annuity Ins. Co., Case No. 03-C-08-006022 (Cir. Ct. Baltimore County, Apr. 10, 2009). That suit, arising from the same events as the Ruark Action, was consolidated with the Ruark Action in the Circuit Court for the County of Baltimore.

In turn, Insurance Alternatives filed a third-party complaint ("Insurance Alternatives' Third-Party Action") against Myers and TGM seeking indemnification and contribution for any liability it incurs in connection with the Hartford Action. Insurance Alternatives' Third-Party Action also alleged that TGM and Myers provided tax and accounting services for the Ruark Companies. The Insurance Alternatives' Third-Party Action alleged that "Myers advised [Baja Holdings], through Abresch, that the premiums for the insurance products that funded the

6

[Baja Holdings] 412(i) Plan were tax deductible expenditures under the Internal Revenue Code."  J.A. 91, ¶6.

### 3. Fowler Action

Similar to the Ruark Action, Caleb Fowler and his company, Arbitration & Mediation, Inc. ("A&M"), filed a complaint (the "Fowler Action") against TGM and Myers alleging causes of action for negligence and negligent misrepresentation.  See Fowler v. Myers, Case No. 19-C09-013249 (Cir. Ct. Somerset County, June 3, 2009).  The Fowler Action alleged that, in early 2003, "Myers, acting as an accountant and tax advisor for [Fowler] and A&M, recommended and proposed that [Fowler] and A&M create the A&M DBP [Defined Benefit Plan]," funded entirely by two life insurance policies written by Hartford Insurance.  J.A. 101, ¶13.  The Fowler Action further asserted that "Myers arranged for [Fowler] to receive a proposal to implement the [A&M] 412(i) Concept."  J.A. 101, ¶14.

According to the Fowler Action, in late 2005 and/or early 2006, Myers prepared and filed income tax returns for 2004 for plaintiffs without including forms required for a listed transaction, and without advising plaintiffs of the penalties that would be incurred for failing to file such forms.  As a result, A&M was audited in 2006, incurred audit-related legal and accounting fees and expenses, and will likely face

7

significant tax liability. The Fowler Action also alleged that TGM and Myers received professional fees and failed to inform plaintiffs that TGM and Myers would receive substantial commissions on the sale of insurance policies to A&M.

## C. Duty to Defend Action

CAMICO Insurance declined to defend TGM and Myers in the actions brought by Ruark, Insurance Alternatives' Third-Party, and Fowler (collectively the "underlying actions"). CAMICO Insurance explained that the claims at issue were "alleged to have arisen because Mr. Myers sold 'defective' insurance products." J.A. 163. Therefore, according to CAMICO Insurance, the "Special Exclusion Endorsement" and "Product Liability" exclusion barred coverage.

In turn, on September 14, 2009, TGM and Myers filed a declaratory judgment and breach of contract action pertaining to CAMICO Insurance's duty to defend the underlying actions. On October 22, 2009, CAMICO Insurance removed TGM's and Myers's action to federal district court based on diversity jurisdiction. On October 29, 2009, CAMICO Insurance filed its answer and counterclaim seeking a declaration that it had no indemnity obligation to TGM and Myers arising from the claims in the underlying actions.

8

In response, TGM and Myers moved to dismiss the counterclaim and for partial summary judgment, seeking a declaration that CAMICO Insurance had an obligation to provide TGM and Myers with an ongoing defense in the underlying actions and that CAMICO Insurance was liable for TGM's and Myers's previously incurred defense costs. TGM and Myers argued CAMICO Insurance had a duty to defend them because the claims in the underlying actions arose from covered "Professional Services." Trice, Geary & Myers, LLC v. CAMICO Mut. Ins. Co., No. WDQ-09-2754, 2010 WL 1375389, at *4 (D. Md. March 25, 2010).

CAMICO Insurance filed a cross-motion for summary judgment as to all counts in TGM's and Myers's complaint. CAMICO Insurance argued that the underlying actions all related to Myers's sales of Defined Benefit Plans in his capacity as a Hartford Insurance agent, which was excluded from coverage by the "Special Exclusion Endorsement" and the "Products Liability" exclusion. Id.

On March 25, 2010, the district court denied TGM's and Myer's motions and granted CAMICO Insurance's motion for summary judgment. The district court determined that the claims were excluded under the "Special Exclusion Endorsement" because all of the claims asserted in the underlying actions were "in connection with or arising out of" Myers's acts, errors, and omissions regarding the sale of the Hartford life insurance and

9

annuity products.  Id.  The district court therefore held that CAMICO Insurance had no obligation to defend or indemnify TGM or Myers.  Id. at *6.  TGM and Myers appeal.

II.

We first consider TGM and Myers's argument that the district court erred in finding no duty on the part of CAMICO Insurance to defend TGM and Myers under the Policy.

We review de novo a grant of summary judgment.  Overstreet v. Kentucky Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c). "When reviewing cross-motions for summary judgment, we may, if appropriate, direct entry of judgment in favor of the party whose motion was denied by the district court."  Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1020 (4th Cir. 1997) (citing Monahan v. Cnty. of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996)).

Maryland law governs our analysis in this matter because this is a diversity action in which the Policy was issued to TGM in Maryland.  Klaxon Co. v. Stentor Elec. Mfg. Co. 313 U.S. 487, 496-97 (1941) (holding that a federal court sitting in diversity

jurisdiction must apply the choice-of-law principles of the state in which the federal court is located).  "[T]he law of the place of contracting determines the validity and effect of a contract with respect to the nature and extent of the duty owed by a party who becomes bound to perform."  Traylor v. Grafton, 273 Md. 649, 660, 332 A.2d 651, 659 (1975) (citations omitted); see also Roy v. Nw. Nat'l Life Ins. Co., 974 F. Supp. 508, 512 (D. Md. 1997) ("In insurance contract cases, Maryland courts generally follow the rule of lex locus contractu, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made.") (citing Sting Sec., Inc. v. First Mercury Syndicate, Inc., 791 F. Supp. 555, 558 (D. Md. 1992)).

Maryland courts construe an insurer's duty to defend its insured very broadly:

> Our cases hold that the obligation of an insurer to defend its insured under the provisions of a contract of insurance is determined by the allegations in the tort action.  Thus, if the plaintiff in the tort suit alleges a claim covered by the policy, the insurer has a duty to defend.  Even if a tort plaintiff does not allege facts which clearly bring the claim within the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.

Lloyd E. Mitchell, Inc. v. Maryland Cas. Co., 324 Md. 44, 62 n.4, 595 A.2d 469, 478 n.4 (1991) (citing Brohawn v. Transamerica Ins. Co., 276 Md. 396, 507, 347 A.2d 842, 850

11

(1975) (holding there was a duty to defend an insured in a tort suit brought by injured third-parties that alleged negligence and assault, even though the policy excluded from coverage acts that were committed with the intent to injure)). "If there is a possibility, even a remote one, that the plaintiff's claims could be covered by the policy, there is a duty to defend." Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 231, 695 A.2d 566, 572 (1997) (citing Brohawn, 276 Md. at 408, 347 A.2d at 850; Andrew Janquitto, Insurer's Duty to Defend in Maryland, 18 U.Balt.L.Rev. 1, 13-14 (1988)).

To determine whether there is a potentiality of coverage giving rise to the duty to defend, the Maryland Court of Appeals in St. Paul Fire & Marine Ins. Co. v. Pryseski, 292 Md. 187, 438 A.2d 282 (1981), set forth a two-pronged inquiry:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

Id. at 193, 438 A.2d at 285; see also Aetna Cas. & Sur. Co. v. Cochran, 337 Md. 98, 103-04, 651 A.2d 859, 862 (1995).

A.

In addressing the first prong of the Pryseski inquiry, we focus on the language of the insurance policy. "When interpreting the meaning of an insurance policy under the first prong of our analytical paradigm, we construe the instrument as a whole to determine the intention of the parties." Clendenin Bros., Inc. v. U.S. Fire Ins. Co., 390 Md. 449, 458, 889 A.2d 387, 393 (2006) (citations omitted). In determining the boundaries of coverage, a court construes an insurance policy just as it does any other contract, by giving its terms their "customary, ordinary, and accepted meaning." Aetna Cas. & Sur. Co., 337 Md. at 104, 651 A.2d at 862 (citation omitted).

Under the Policy, CAMICO Insurance owes a duty to defend claims "arising out of an *Insured's* negligent act, error or omission in rendering or failing to render *Professional Services*." J.A. 21. The Policy defines "Professional Services" as "any professional services performed by an *Insured* as long as the fees or commissions, if any, or other benefits from such services inure to the benefit of the *Named Insured*[.]" J.A. 26.

The "Special Exclusion Endorsement," which seeks to limit coverage, includes an insurance agent or broker exclusion. However, this "Special Exclusion Endorsement" contains several materially different versions of exclusionary language that

13

create inconsistencies in the scope of the limitation of coverage.

As guidance for interpreting an ambiguity in an insurance policy, we observe that the Maryland Court of Appeals has held that:

> Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced . . . it will be construed against the insurer as the drafter of the instrument.

Cheney v. Bell Nat. Life Ins. Co., 315 Md. 761, 766-67, 556 A.2d 1135, 1138 (1989)(citations omitted); see also Pryseski, 292 Md. at 193, 438 A.2d at 285. Accordingly, under Maryland law, because there is no extrinsic or parol evidence introduced in this matter, any ambiguity in the "Special Endorsement Exclusion" should be resolved against CAMICO Insurance, the party that prepared the Policy.

We agree with TGM's and Myers's assertion that because CAMICO Insurance invoked the exclusion for claims "in connection with or arising out of any act, error or omission by any Insured in his/her capacity as an [insurance] agent or broker," the exclusion applies only to claims asserting insurance agent or broker professional liability.

14

Three similar, but not identical, clauses of the "Special Exclusion Endorsement" concern the scope of the endorsement. First, the introductory paragraph of the "Special Exclusion Endorsement" states in an incomplete clause: "This policy does not apply to any Claims in connection with, arising out of or relating to"[.] J.A. 40 (emphasis added). A later phrase reads: "This Policy does not provide insurance for any Insured's professional liability arising from acts, errors or omissions in rendering or failure to render services as an insurance agent or broker." J.A. 40 (emphasis added). Finally, a third clause states, in part: "This insurance does not apply to any Claim in connection with or arising out of any act, error or omission by any Insured in his/her capacity as an agent or broker for the placement or renewal of insurance products or for the sale of annuities." J.A. 40 (emphasis added). Thus, the second clause notably does not contain the broader "in connection with and arising out of" language that appears in the first and third clauses.

We decline to accept CAMICO Insurance's argument that when CAMICO Insurance and its insureds agreed to the "in connection with or arising out of" language in the "Special Exclusion Endorsement", they also agreed that, even if there were several grounds for a claim, coverage would be barred so long as one of the grounds was any insured's having placed or sold an insurance

15

product.  To support this contention, CAMICO Insurance and the district court rely on N. Ass. Co. of America v. EDP Floors, Inc., 311 Md. 217, 533 A.2d 682 (1987), and Mass Transit Admin. v. CSX Transport., Inc., 349 Md. 299, 708 A.2d 298 (1998).

We find these two cases inapposite, as the present case deals with a "Special Exclusion Endorsement" in a professional liability policy, whereas EDP Floors involved the interpretation of an exclusion in a general liability policy, 311 Md. at 225, 533 A.2d at 686, and CSX Transportation concerned the interpretation of an indemnification clause in a contract, 249 Md. at 301, 708 A.2d at 300.  As such, the focus of the exclusion at issue here is whether the acts, errors, or omissions of the insureds arise out of their capacity as brokers and agents.

Here, the focus of the exclusion is not a particular type of accident or instrumentality of the injury.  Instead, we must interpret whether the acts, errors, or omissions of the insureds arise out of their capacity as brokers and agents.  "To be sure, the phrase 'arising out of' is used frequently in insurance contracts, and has been the subject of prior interpretation by Maryland courts . . . . Nevertheless, it does not have a single, 'settled meaning' that applies to every insurance policy. Contractual language cannot be construed in a vacuum." Philadelphia Indem. Ins. Co. v. Md. Yacht Club, Inc., 129 Md.

16

App. 455, 469, 742 A.2d 79, 86 (1999) (citing <u>Finci v. Am. Cas. Co.</u>, 323 Md. 358, 369-70, 593 A.2d 1069, 1075 (1991)) (internal quotation omitted).

Additionally, CAMICO Insurance asserts that merely "acting" as an agent or broker is itself sufficient to invoke the "Special Exclusion Endorsement". The terms "agent" and "broker" are not defined in the policy. But they are terms of art under Maryland law, which sets forth three factors to determine whether a principal-agent relationship exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." <u>Green v. H & R Block, Inc</u>., 355 Md. 488, 503, 735 A.2d 1039, 1048 (1999)[2] (citations omitted). The burden is on the insurer, not the insured, to prove the applicability of an exclusion. <u>See</u> <u>Ace Am. Ins. Co. v. Ascend One Corp</u>., 570 F. Supp. 2d 789, 798 (D. Md. 2008) ("Under Maryland law, the burden rests on the insurer to establish the applicability of a particular exclusion from coverage.") (citing <u>Warfield-Dorsey Co., Inc. v. Travelers Cas.</u>

---

[2] Similarly, a "broker" is an "agent who acts as an intermediary or negotiator, esp. between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation." <u>Black's Law Dictionary</u> 219 (9th ed. 2009).

& Sur. Co. of Illinois, 66 F. Supp. 2d 681, 685 (D. Md. 1999)). CAMICO Insurance has not proven the principal-agent factors.

Thus, in answer to the first part of our inquiry under Pryseski, we conclude that the language of the "Special Exclusion Endorsement" does not preclude coverage for TGM and Myers.

## B.

Under the next prong of the Pryseski inquiry, we must determine whether the facts alleged in the underlying actions are potentially within the scope of the Policy's coverage. The controlling factor relating to CAMICO Insurance's duty to defend is whether the allegations contained in the underlying actions "are such that a 'potentiality' of coverage exists." W. World Ins. Co., Inc. v. Harford Mut. Ins. Co., 784 F.2d 558, 562, (4th Cir. 1986) (citing Brohawn, 276 Md. 396, 347 A.2d 842).

> "The fact that the pleadings state a cause of action that is not covered by the policy does not excuse insurer if another ground for recovery is stated that is covered . . . . Accordingly, the insurer is obligated to provide a defense against the allegations of covered as well as the noncovered claims." Doubts as to whether an allegation indicates the possibility of coverage should be resolved in the insured's favor.

Utica Mut. Ins. Co. v. Miller, 130 Md. App. 373, 383, 746 A.2d 935, 940-41 (2000) (quoting John Alan Appleman, Insurance Law & Practice, § 4684.01 (Rev. ed. 1979) at 102-06) (internal

18

parenthesis omitted); see also Clendenin Bros., 390 Md. at 460, 889 A.2d at 394; Litz, 346 Md. at 217, 695 A.2d at 572.

This Court must analyze each of the complaints filed against TGM and Myers and compare the allegations to the scope of the Policy's coverage to determine if TGM and Myers are entitled to a defense in each of the actions. See Pryseski, 292 Md. at 193, 438 A.2d at 285. The central issue is the capacity in which Myers acted when he provided advice to the plaintiffs in the underlying actions.

1.

The Ruark Action contained specific assertions regarding Myers's and TGM's professional accounting and tax services to plaintiffs. Myers and TGM were retained to provide accounting and tax advice. Acting on Myers's advice, Ruark and Baja Holdings allegedly invested some $14 million in life insurance to fund the Baja Defined Benefit Plan. Thereafter, the IRS audited Ruark and disallowed deductions based on the Baja Defined Benefit Plan. In 2004 and 2005, Myers prepared tax returns for Ruark and did not include required forms for the listed transaction.

The Ruark Action alleged that TGM and Myers received professional fees in connection with the accounting and tax advice they provided but failed to disclose that they would

19

receive substantial commissions on the life insurance sales. However, the Ruark Action did not identify TGM or Myers as agents or brokers, and there were no allegations that plaintiffs relied on them to perform any duties on their behalf as insurance agents or brokers. In fact, the Ruark Action specifically identified Michael DiMayo as the Hartford insurance agent: "Myers put [Ruark and Baja Holdings] in contact with Michael DiMayo ('DiMayo') . . . , a licensed Hartford agent, who provided Plaintiffs with various proposals to implement the 412(i) Concept." J.A. 45, ¶14. DiMayo allegedly represented that the arrangement would comply with tax regulations, and Myers concurred with those representations in his advisory capacity.

2.

The Insurance Alternatives' Third-Party Action also included specific allegations relating to TGM's and Myers's role as accountants and tax advisors. The Insurance Alternatives' Third-Party Action alleged specifically that "Myers and TGM . . . have performed tax and accounting services for Ruark Company." J.A. 91, ¶3. The Insurance Alternatives' Third-Party Action also alleged that Baja Holdings, through Abresch, relied upon TGM and Myers's tax advice. The Action further alleged that Myers and TGM "had a duty to ensure that information conveyed .

20

. . as to the deductibility of premiums . . . was accurate."
J.A. 94, ¶21.

3.

The Fowler Action also included allegations that TGM and Myers provided negligent accounting and tax services:

> Myers and TGM had duties (a) to act with care and skill of reasonably competent accountants and tax advisors in advising Plaintiffs with respect to the implementation of the 412(i) Concept, the formation of A&M DBP, and the selection of the A&M Policy to fund the A&M DBP; (b) to inform Plaintiffs of the risks involved with the 412(i) Concept; and (c) to inform Plaintiffs of all facts material to the transaction.

J.A. 108, ¶45. Myers and TGM allegedly breached the duty of care by "[f]ailing to advise Plaintiffs of the February 2004 IRS Guidance making the 412(i) Concept a listed transaction; [n]ot advising Plaintiffs to file the required listed transaction forms with their 2004 and 2005 tax returns; [and]. . . [a]dvising Plaintiffs that IRS Ruling 2004-20 would not apply to Plaintiffs." J.A. 109, ¶46.

In sum, contrary to the district court's interpretation, all of the underlying actions asserted that Myers and TGM acted as accountants and tax advisors. Only the Insurance Alternatives' Third-Party Action, which seeks indemnification and contribution from TGM and Myers, contained a fleeting allegation relating to Myers's status as a Hartford Insurance

21

agent. Even so, this sole allegation does not irrefutably put all of the underlying actions within the "Special Exclusion Endorsement." There are no allegations in the Ruark and Fowler Actions that Myers acted as an insurance agent or broker. Additionally, although CAMICO Insurance and the district court noted that Myers and TGM received a commission on the insurance sales, this fact does not show a principal-agent relationship or employment as a broker, and there is no evidence in the record to support such a conclusion. Moreover, even if such evidence existed, it would not change the fact that the underlying actions raise the specter of coverage. And "[s]o long as a complaint raises a potentiality of coverage, an insurer is under a duty to defend an insured named in that complaint." W. World Ins. Co., 784 F.2d at 562.

We conclude that CAMICO Insurance has a duty to defend TGM and Myers. Accordingly, we reverse the district court's judgment to the contrary and direct the district court to grant TGM and Myers's motion for partial summary judgment seeking a declaration that CAMICO Insurance must provide them with a defense in the underlying actions.

III.

TGM and Myers also argue on appeal that the district court erred by granting summary judgment on CAMICO Insurance's

22

Counterclaim seeking a declaration that it had no duty to indemnify. "Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend." Litz, 346 Md. at 225, 695 A.2d at 570 (citation omitted). "The duty to indemnify, by contrast, refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of America, 448 F.3d 252, 257-58 (4th Cir. 2006).

> If the issue upon which coverage is denied were not the ultimate issue to be determined in a pending suit by a third party, a declaratory judgment would be appropriate. But where, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment.

Brohawn, 276 Md. at 406, 347 A.2d at 849 (citing Watson v. Dorsey, 265 Md. 509, 512 n.1, 290 A.2d 530 (1972)); see also Nautilus Ins. Co. v. BSA Ltd. P'ship, 602 F. Supp. 2d 641, 657 (D. Md. 2009) ("Generally, the question of whether a company must indemnify 'turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage.'") (quoting USAA Cas. Ins. Co. v. Mummert, 213 F. Supp. 2d 538, 541 (D. Md. 2002)). Thus, a declaration concerning indemnification is inappropriate when related to

23

issues to be litigated. See Chantel Assocs. v. Mount Vernon Fire Ins. Co., 338 Md. 131, 149, 656 A.2d 779, 788 (1995).

The issue of whether Myers acted as Hartford Insurance's agent or broker is not independent and separable from the issues to be decided in the underlying actions. Again, the gravamen of the underlying actions is that Myers and TGM rendered substandard accounting and tax advice. Nevertheless, the underlying actions also contain causes of action for negligent misrepresentation, based in part on TGM's and Myers's failure to disclose that they would receive substantial commissions on the life insurance sales.

Additionally, although CAMICO Insurance is obligated to defend the underlying actions based on the allegations as set forth in the complaints, the "ultimate findings of fact," Nautilus Ins. Co., 602 F. Supp. 2d at 657, at trial may be that TGM and Myers received commissions and/or acted as undisclosed agents for Hartford Insurance, and that the allegedly negligent tax advice "arose out" of the conflict of interest that TGM and Myers may have had stemming from their role as tax advisers to the plaintiffs, on the one hand, and as brokers or agents to Hartford Insurance on the other. These findings may in fact trigger the application of the "Special Exclusion Endorsement" and absolve CAMICO Insurance of any duty to indemnify TGM and Myers for any damages awarded to the plaintiffs in the

24

underlying actions, notwithstanding our conclusion that CAMICO Insurance is obligated to defend the underlying actions in the first place.

Consequently, a declaration as to CAMICO Insurance's duty of indemnification would be premature at this time; such a declaration should instead be made after the underlying actions are resolved. See Brohawn, 276 Md. at 404-06, 347 A.2d at 848-49. Accordingly, we agree with TGM and Myers that the district court erred by granting summary judgment in favor of CAMICO Insurance on its Counterclaim. Similarly, because the determination of CAMICO Insurance's duty of indemnification would be premature at this time, we dismiss TGM's and Myers' motion to dismiss CAMICO Insurance's Counterclaim.

IV.

In sum, because there is a potentiality of coverage, we hold that CAMICO Insurance has a duty to defend TGM and Myers. We therefore reverse the district court's ruling to the contrary and direct it to grant TGM and Myers's motion for partial summary judgment seeking a declaration that CAMICO Insurance is obligated to defend them in the underlying actions. Further, because any determination as to whether CAMICO Insurance has a duty to indemnify TGM and Myers must await the resolution of the underlying actions, we reverse the district court's award of

25

summary judgment in favor of CAMICO Insurance on its Counterclaim.

REVERSED AND REMANDED